**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

KARSTEN LYDELL WATKINS,      )
                             )
         Petitioner,         )
                             )
    v.                       )        1:18CR379
                             )        1:19CV1024
UNITED STATES OF AMERICA,     )
                             )
         Respondent.         )

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 24).[1] For the reasons that follow, the Court should deny the Section 2255 Motion.

<u>INTRODUCTION</u>

This Court (per United States District Judge William L. Osteen, Jr.) entered a Judgment against Petitioner imposing, inter alia, a prison term of 71 months upon his guilty plea to possessing a firearm as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Docket Entry 21; <u>see also</u> Docket Entry 1 (Indictment); Docket Entry 11 (Factual Basis); Docket Entry 12 (Plea Agreement); Minute Entry dated Dec. 3, 2018 (documenting guilty plea); Minute Entry dated Mar. 12, 2019 (documenting sentencing).) Petitioner did not appeal (<u>see</u> Docket Entry 24, ¶ 8), but did later timely

────────────────

[1]   Parenthetical citations refer to Petitioner's above-referenced criminal case.

file the Section 2255 Motion, raising three grounds for relief, i.e., a claim attacking his guilty plea based on <u>Rehaif v. United States</u>, 588 U.S. ___, 139 S. Ct. 2191 (2019), a claim challenging a Sentencing Guidelines calculation, and a claim asserting ineffective assistance of counsel (<u>see</u> Docket Entry 24, ¶ 12), as well as a Supplement to the Section 2255 Motion (attempting to bolster the <u>Rehaif</u> claim) (<u>see</u> Docket Entry 25). The Court (per the undersigned Magistrate Judge) subsequently stayed disposition of the Section 2255 Motion, pending final resolution of an appeal of another case addressing <u>Rehaif</u>-related issues. (<u>See</u> Docket Entries 31, 33.) After the Supreme Court resolved the case which had led to the stay – in <u>Greer v. United States</u>, ___ U.S. ___, 141 S. Ct. 2090 (2021) – the United States responded to the Section 2255 Motion (on August 13, 2021). (<u>See</u> Docket Entry 40.) Despite notice (via letter from the Clerk that same day) of the right to reply to that response and a warning that "failure to file a reply brief . . . within the time allowed may cause the [C]ourt to conclude that the government's contentions are undisputed" (Docket Entry 41 at 1; <u>see also</u> <u>id.</u> ("As a result, the [C]ourt may dismiss your suit or render judgment against you.")), Petitioner did not file a reply (<u>see</u> Docket Entries dated Aug. 13, 2021, to present).

## DISCUSSION

### Ground One

In its first ground for relief, the Section 2255 Motion alleges that, "[i]n light of the Rehaif[ ] decision, [ P]etitioner is innocent of the [Section] 922(g) offense and the [United States] failed to meet all elements[.]" (Docket Entry 24, ¶ 12(Ground One) (underscoring added).) For that claim's "[s]upporting facts" (id., ¶ 12(Ground One)(a)), the Section 2255 Motion states:

> The government obtained the [Section] 922(g) indictment based upon 2 elements. However, the S[u]p[reme] C[our]t ruled that [Section] 922(g) requires all 4 elements to be met before a conviction can be obtained. In this case, the Rehaif decision deems [ P]etitioner actually innocent of the offense and [ P]etitioner moves the [C]ourt for [i]mmediate [r]elease in light of Rehaif[ ] and U[nited] S[tates] v. Hodge, 902 F.3d 420 (4th Cir. 2018), which states that the government lost its right and does not get a double bite at the apple.

(Id. (underscoring added).)

In Rehaif, the United States Supreme Court ruled that, in felon-firearm prosecutions under Sections 922(g) and 924(a)(2), the United States "must prove not only that the defendant knew he possessed a firearm, but also that he knew he was a felon when he possessed the firearm." Greer, ___ U.S. at ___, 141 S. Ct. at 2095 (emphasis omitted) (citing Rehaif, 588 U.S. at ___, 139 S. Ct. at 2199-2200). Petitioner's (pre-Rehaif) Indictment did not identify knowledge of his prior felony conviction(s) as an element of the charged felon-firearm offense. (See Docket Entry 1 at 1; see also Docket Entry 40 at 1-15 (making no argument that

3

Petitioner's pre-<u>Rehaif</u> guilty plea colloquy treated knowledge-of-status as offense element).)  Nonetheless, where – as here, as the United States has pointed out (<u>see</u> Docket Entry 40 at 3) – a defendant fails to challenge the validity of his or her guilty plea on direct appeal, the doctrine of procedural default will bar a collateral attack on that plea.  <u>See</u> <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998) (holding that "voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); <u>see also</u> <u>United States v. Timmreck</u>, 441 U.S. 780, 784 (1979) (observing that "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas" (internal footnote omitted)).[2]

---

[2] Borrowing the words of a neighboring court:

> To the extent that [Petitioner] suggests that [] *Hodge*[] somehow entitles him to relief, he is incorrect.  In *Hodge*, the United States Court of Appeals for the Fourth Circuit explained that the Government must identify the convictions it wishes to use to support an enhanced sentence under the Armed Career Criminal Act ("ACCA") at the time of sentencing.  [Petitioner] was not sentenced under ACCA, and therefore, *Hodge* provides him with no relief.

<u>United States v. Higgs</u>, No. 3:16CR4, 2018 WL 4690895, at *5 (E.D. Va. Sept. 28, 2018) (unpublished) (missing italics and quotation mark added) (internal citation omitted); <u>appeal dismissed</u>, 790 F. App'x 529 (4th Cir. 2020); <u>see also</u> <u>United States v. Alston</u>, 855 F. App'x 895, 896 (4th Cir. 2021) (rejecting attempt to extend <u>Hodge</u> into other contexts).

4

"A procedural default . . . may be excused in two circumstances: where a person attacking his conviction can establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice' resulting therefrom." United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012) (quoting Bousley, 523 U.S. at 622). Again as the United States has argued (see Docket Entry 40 at 4-12), Petitioner cannot establish such circumstances.

To begin, Petitioner may not rely, as cause for his default, on the alleged futility, at the time of his direct appeal, of the argument only later adopted in Rehaif. "[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim," Reed v. Ross, 468 U.S. 1, 16 (1984) (emphasis added); however, "[w]here the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of . . . finality counsel against labeling alleged unawareness of the objection as cause for a procedural default," Engle v. Isaac, 456 U.S. 107, 134 (1982) (internal footnote omitted). In Bousley, the Supreme Court further explained the meaning of the phrase "reasonably available" and the concept of "futility" in the procedural default context:

> [The petitioner] argues that the legal basis for his claim was not reasonably available to counsel at the time his plea was entered. This argument is without merit. While we have held that a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default, Reed[],

5

468 U.S. [at] 16[], [the] petitioner's claim does not qualify as such. The argument that it was error for the [d]istrict [c]ourt to misinform [the] petitioner as to the statutory elements of [the offense to which he entered a plea] was most surely not a novel one. Indeed, at the time of [the] petitioner's plea, the Federal Reporters were replete with cases involving challenges [of the sort he proposes]. [The p]etitioner also contends that his default should be excused because . . . any attempt to attack [his] guilty plea would have been futile. This argument, too, is unavailing. As we clearly stated in Engle[], "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." [Engle, 456 U.S.] at 130[] n.35[]. Therefore, [the] petitioner is unable to establish cause for his default.

Bousley, 523 U.S. at 622−23 (certain quotation marks, some internal citations, and footnote omitted).

Courts around the nation (including in the Fourth Circuit) have applied Bousley to conclude that a petitioner's Rehaif-based "knowledge of status" argument does not qualify as "novel" and thus does not establish "cause" excusing default, as exemplified here:

[The petitioner]'s claim is virtually identical to Bousley, in that numerous courts have opined on the "knowledge of status" argument [the petitioner] asserts here prior to Rehaif. In fact, "knowledge of status" arguments have been a consistent feature of statutory interpretation cases since at least the 1950's. In other words, [the petitioner]'s claim is hardly novel, either generally or in its particular application to the statute under which he was convicted. Thus, [the petitioner]'s claim does not overcome procedural default based upon cause and prejudice, because he cannot show that his knowledge of status argument is sufficiently novel.

Gray v. United States, No. 3:19C607, 2020 WL 127646, at *3 (M.D. Tenn. Jan. 10, 2020) (unpublished) (internal citations omitted); accord, e.g., Wilson v. United States, Nos. 1:14CR482, 1:19CV909,

6

2022 WL 4227368, at *2-3 (M.D.N.C. May 25, 2022) (unpublished), recommendation adopted, 2022 WL 4221338 (M.D.N.C. Sept. 13, 2022) (unpublished) (Osteen, J.); Chiles v. United States, Nos. 1:18CR7, 1:20CV80, 2021 WL 6010347, at *4-5 (N.D.W. Va. Dec. 20, 2021) (unpublished), appeal dismissed, No. 22-6113, 2022 WL 2387070 (4th Cir. July 1, 2022) (unpublished); Slocum v. United States, Nos. 2:13CR274, 2:17CV3759, 2021 WL 3706682, at *9 (S.D.W. Va. Aug. 20, 2021) (unpublished), appeal filed, No. 21-7283 (4th Cir. Sept. 7, 2021); United States v. Asmer, Crim. No. 3:16-423, 2020 WL 6827829, at *5-7 (D.S.C. Nov. 20, 2020) (unpublished), appeal dismissed, No. 21-6064 (4th Cir. Sept. 29, 2021) (slip op.); McCauley v. United States, Nos. 1:13CR423, 1:17CV666, 2020 WL 5881270, at *6-7 (M.D.N.C. Sept. 4, 2020) (unpublished), recommendation adopted, 2020 WL 5821074 (M.D.N.C. Sept. 30, 2020) (unpublished) (Schroeder, C.J.); Wilson v. United States, Nos. 3:14CR254, 3:19CV280, 2020 WL 4950930, at *8 (W.D.N.C. Aug. 24, 2020) (unpublished), appeal dismissed, No. 20-7436, 2020 WL 9148121 (4th Cir. Nov. 30, 2020) (unpublished); see also Cruickshank v. United States, 505 F. Supp. 3d 1127, 1133 (W.D. Wash. 2020) (citing Gray and United States v. Vasquez-Ahumada, No. 5:18CR5, 2020 WL 3213397, at *2 (W.D. Va. June 15, 2020) (unpublished), as well as rulings from courts in five other Circuits, in holding "that *Rehaif* did not create a . . . novel rule that would support a finding of cause"), appeal dismissed, No. 20-36061, 2021 WL 5851076 (9th Cir. July 2, 2021)

7

(unpublished); but see, e.g., United States v. Dempster, Crim. No. 14-24, Civ. No. 20-1424, 2022 WL 486791, at *3 (D. Md. Feb. 17, 2022) (unpublished) (finding cause for default of Rehaif claim, but denying relief for want of proof of actual prejudice); Merritt v. United States, 499 F. Supp. 3d 249, 257-62 (E.D. Va. 2020) (same).[3]

Nor could Petitioner carry his burden of showing actual prejudice[4] or actual innocence to bypass the procedural bar, as the record contains overwhelming proof that he knew his felon status at the time he possessed a firearm. In that regard, the Factual Basis supporting Petitioner's guilty plea recites: "[Petitioner] has

---

[3] Conversely, any failure by Petitioner's counsel to anticipate the Supreme Court's ruling in Rehaif abrogating the Fourth Circuit's (longstanding) contrary holding in United States v. Langley, 62 F.3d 602, 604-08 (4th Cir. 1995), "does not constitute deficient performance under Strickland," United States v. Hilliard, No. 3:17CR44, 2021 WL 2369400, at *7 n.13 (E.D. Va. June 9, 2021) (unpublished), appeal dismissed, No. 21-7035, 2021 WL 6116852 (4th Cir. Dec. 27, 2021) (unpublished), and thus "cannot serve as the cause [excusing] the default of [Petitioner's] Rehaif claim," id.; accord, e.g., Wilson, 2022 WL 4227368, at *3 n.3; Coble v. United States, Nos. 1:18CR203, 1:19CV1146, 2021 WL 5810454, at *7 (M.D.N.C. Dec. 7, 2021) (unpublished) (Eagles, J.); Morgan v. United States, Nos. 1:14CR194 & 414, 1:20CV965, 2021 WL 6427676, at *4 (M.D.N.C. Nov. 10, 2021) (unpublished) (Webster, M.J.), recommendation adopted, 2022 WL 112189 (M.D.N.C. Jan. 12, 2022) (unpublished) (Schroeder, C.J.), appeal filed, Nos. 22-6947, 22-6948 (4th Cir. Aug. 18, 2022); United States v. Solomon, No. 3:16CR342, 2021 WL 1124723, at *5-6 (D.S.C. Mar. 24, 2021) (unpublished).

[4] For reasons detailed above, Petitioner cannot meet the "cause" prong of the "cause and actual prejudice" exception. "Accordingly, the [C]ourt need not proceed to analyze the [actual] prejudice prong . . . . However, for the sake of thoroughness, th[is Recommendation] will proceed to consider whether, assuming arguendo [he] demonstrated cause, he can demonstrate . . . actual prejudice." Asmer, 2020 WL 6827829, at *7 (emphasis omitted).

many convictions, including a 2000 conviction for manslaughter, which resulted in a term of imprisonment of 90 to 117 months. [Petitioner] has not received a pardon nor had his right to possess a firearm restored." (Docket Entry 11 at 2; see also Docket Entry 17 ("PSR"), ¶¶ 29 (documenting armed robbery and voluntary manslaughter convictions, with consolidated prison sentence of 90 to 117 months, as well as Petitioner's service of more than six years in prison on that sentence), 31 (documenting felony maintain vehicle/dwelling/place for controlled substance conviction, with suspended prison sentence of 6 to 17 months), 33 (documenting convictions for two counts of sale of heroin, with consecutive, suspended prison sentences of 13 to 25 months for each).)[5]

Further, the circumstances of Petitioner's arrest support the conclusion that he knew of his felon status when he possessed the firearm in question. In that regard, the Factual Basis states that, when officers stopped Petitioner's car, "[Petitioner] refused to get out of the car. As officers struggled to extricate [Petitioner] from the driver's seat of the vehicle, they noticed the handle of a firearm protruding from the rear pocket of his pants." (Docket Entry 11 at 1.) The PSR provides more detail: "A traffic stop of the silver Monte Carlo was conducted. Officers were ordering [Petitioner] to open the vehicle door. [Petitioner]

---

[5] Petitioner "ha[d] no objections [to the PSR]." (Docket Entry 17, Addendum; see also Docket Entry 22 at 1 ("The [C]ourt adopts the [PSR] without change.").)

was not complying but did have his hands raised. As the officers struggled to extricate [Petitioner] from the driver's seat of the vehicle, they noticed the handle of a firearm protruding from the rear pocket of his jeans." (Docket Entry 17, ¶ 5.) Petitioner's attempt to conceal the firearm supports an inference that Petitioner knew he could not lawfully possess a firearm. See United States v. Waller, Crim. No. 14-40, 2021 WL 1060291, at *4 (W.D. Pa. Mar. 19, 2021) (unpublished) ("[T]he record is replete with testimony of [the d]efendant's furtive conduct, which demonstrates his consciousness of guilt and serves as circumstantial evidence of his knowledge of felon status."); United States v. Hoover, Crim. No. 17-525, 2020 WL 859331, at *5 (D.N.J. Feb. 21, 2020) (unpublished) (citing evidence of the defendant's "concealment" of firearm in concluding he could not show jury would have failed to find he knew of felon status if properly instructed under Rehaif), aff'd, 857 F. App'x 721 (3d Cir. 2021); see also United States v. Arthurs, 823 F. App'x 692, 697 (10th Cir. 2020) ("If before his arrest [the defendant] knew [he could not possess a firearm], then it is inconceivable that [he] did not know that he was a felon at the time of his arrest.").

In addition, following his arrest, "[Petitioner] admitted that the firearm was his, and that he purchased it 'off the street' for $50." (Docket Entry 11 at 2; accord Docket Entry 17, ¶ 5.) Such admissions constitute further evidence of Petitioner's knowledge of

his prohibited status. See, e.g., United States v. Ingram, No. 5:18CR50036, 2022 WL 18232142, at *9 (W.D. Ark. Dec. 27, 2022) (unpublished) (concluding that the petitioner's post-arrest statement "admitt[ing] the firearm belonged to him and that he had obtained it 'on the street'" supported "reasonabl[e] infer[ence] that [the petitioner] was aware that he was prohibited from possessing a firearm"), recommendation adopted, 2023 WL 157800 (W.D. Ark. Jan. 11, 2023) (unpublished); United States v. Jones, No. 3:97CR169, 2022 WL 5101850, at *2 (E.D. Va. Oct. 4, 2022) (unpublished) (citing manner of firearm acquisition as strong evidence of "knowledge of [] status as a felon who could not legally possess a firearm").

Given all the foregoing (still undisputed) evidence, "any [Rehaif] error during [Petitioner's proceeding] could not have affected [his] substantial rights, [and therefore he] cannot show actual prejudice excusing his procedural default," United States v. Bowman, 267 F. App'x 296, 300 (4th Cir. 2008); see also Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) ("To show actual prejudice, [a petitioner] must demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986))). These well-chosen words from a fellow court within the Fourth Circuit faced with a similar Rehaif claim illuminate the path to that conclusion:

11

As the Supreme Court recently observed in *Greer* in the materially analogous situation of determining whether a defendant asserting *Rehaif* error could satisfy the substantial-rights prong of the plain-error test:

> In a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb in trying to satisfy the substantial-rights prong of the plain-error test based on an argument that he did not know he was a felon. The reason is simple: If a person is a felon, he ordinarily knows he is a felon. Felony status is simply not the kind of thing that one forgets. That simple truth is not lost upon juries. Thus, absent a reason to conclude otherwise, a jury will usually find that a defendant knew he was a felon based on the fact that he was a felon. A defendant considering whether to plead guilty would recognize as much and would likely factor that reality into the decision to plead guilty. In short, if a defendant was in fact a felon, it will be difficult for him to carry the burden on plain-error review of showing a reasonable probability that, but for the *Rehaif* error, the outcome of the district court proceedings would have been different.

*Greer*, [___ U.S. at ___,] 141 S. Ct. at 2097.

. . . .

Although the [C]ourt could correctly end its actual prejudice analysis [t]here, the [C]ourt [also may take] note[ of] the undisputed evidence in the habeas record powerfully illustrat[ing] the lack of actual prejudice flowing from the *Rehaif* error in [Petitioner's] case, for it ably demonstrates: (1) the Government could have presented a strong case at trial against [Petitioner] on the missing *Rehaif* element for which he had no viable defense; and (2) pleading guilty offered [Petitioner] a better outcome than he most assuredly would have achieved had he gone to trial. The Government's obligation to prove a defendant's knowledge of his felony status is not burdensome, as "knowledge can be inferred from circumstantial evidence." *Rehaif*, [588 U.S. at ___,] 139 S. Ct. at 2198. The Government most assuredly would have

12

put before the jury undisputed evidence regarding
[Petitioner's prior felony] convictions . . . . Had the
Government put this evidence before a jury on the missing
*Rehaif* element, for which [Petitioner] had no viable
defense, the jury in all reasonable likelihood would have
found, on [the date he possessed a firearm], [he] knew he
had been previously convicted of at least one crime
punishable by a term of imprisonment exceeding one year.
*See Greer*, [___ U.S. at ___,] 141 S. Ct. at 2097-98
(defendants' prior multiple felony convictions
constituted "substantial evidence that they knew they
were felons" at time they possessed firearms as alleged
in federal indictments for felon-in-possession offenses).
Moreover, not to be overlooked in the actual prejudice
analysis is the fact, if convicted [of the felon-firearm
offense] following a jury trial, [Petitioner] would have
lost his three-level decrease in his total offense level
for acceptance of responsibility . . . .

To summarize, when the overwhelming strength of the case
the Government could have presented at trial on the
missing *Rehaif* element is considered with the benefit of
the bargain [Petitioner] would have lost had he not
pleaded guilty, the likelihood [he] would have chosen to
roll the dice at trial on [the felon-firearm offense] had
he known about the missing *Rehaif* element prior to his
guilty plea is nil.

United States v. Sumter, No. 3:02CR499, 2021 WL 3173176, at *10-11

(D.S.C. July 27, 2021) (unpublished) (emphasis, some internal

citations, some parentheticals, and some quotation marks omitted)

(scrivener error in quotation from Greer corrected); see also

Lunsford v. United States, Nos. 1:18CR390, 1:19CV965, 2021 WL

6126989, at *3 (M.D.N.C. Dec. 28, 2021) (unpublished) (Eagles, J.)

("There is overwhelming evidence that [the petitioner] knew he had

been convicted of crimes punishable by over a year in prison

because he served an active sentence in prison of over a year."); 

Jacobs v. United States, Nos. 1:17CR97, 1:20CV440, 2021 WL 5989077,

13

at *4 (M.D.N.C. Dec. 17, 2021) (unpublished) (Eagles, J.) ("[T]he government could have easily proven that [the petitioner] was aware he had been convicted of a crime punishable by over a year of imprisonment. And had he gone to trial and been convicted, he would have lost the substantial benefit he received under the guidelines and the plea agreement for acceptance of responsibility. [The petitioner] has not shown a reasonable probability that, but for the [Rehaif] error, he would not have entered the guilty plea." (internal citation omitted)); United States v. Crawley, No. 4:15CR1, 2021 WL 2910724, at *2-3 (W.D. Va. July 12, 2021) (unpublished) ("Although *Greer* articulated the threshold to show prejudice for [a] *Rehaif* error in a direct appeal under the plain-error standard, the framework is nonetheless instructive in the habeas context where [the petitioner] alleges the same error. In fact, the *actual prejudice* standard for collateral attacks is a 'significantly higher hurdle than would exist on direct appeal.' . . . [T]he evidence would have overwhelmingly indicated that [the petitioner] knew he was a felon. . . . [P]revious felony convictions are substantially probative to prove this element because a jury will usually find that a defendant *knew* he was a felon based on the fact that he *was* a felon. . . . [The petitioner] would likely still have pleaded guilty given the substantial evidence to prove that element. . . ." (italics in

14

original) (some internal citations and quotation marks omitted)
(quoting <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982))).[6]

Finally, "[t]o establish actual innocence, [P]etitioner must
demonstrate that, in light of all the evidence, it is more likely
than not that no reasonable juror would have convicted him."
<u>Bousley</u>, 523 U.S. at 623 (internal quotation marks omitted); <u>see</u>
<u>also</u> <u>id.</u> ("'[A]ctual innocence' means factual innocence, not mere
legal insufficiency."); <u>United States v. MacDonald</u>, 911 F.3d 723,
798 (4th Cir. 2018) ("[The petitioner] face[s] a daunting burden in
establishing his eligibility for relief because of his actual
innocence . . . ." (internal quotation marks omitted)). "[A]s
previously explained, the record forecloses any plausible argument
[Petitioner] did not know he was a felon at the time he possessed
the firearm as alleged in [the Indictment]. For these reasons, [he
cannot] carry his burden of demonstrating he is actually innocent
[and] . . . his procedural default remains unexcused." <u>Sumter</u>,
2021 WL 3173176, at *11 (internal citation omitted).

To conclude:

> [B]ased on the holding in <u>Greer</u> and the fact that it is
> clear that [Petitioner] understood that he had been

---

[6] Indeed, Petitioner has not alleged (let alone produced
competent evidence to show) that he did not know of his felon
status at the time he possessed the firearm he pleaded guilty to
possessing and/or that he would have opted against pleading guilty
(and instead would have proceeded to trial), if he had received
proper instruction on the mens rea element under Section 922(g)(1)
(or that he would do so now if the Court vacated his conviction).
(<u>See</u> Docket Entry 24, ¶ 12(Ground One).)

convicted of a crime punishable by imprisonment for a term exceeding one year, the [C]ourt [should] find[] that [Petitioner] could not make a showing that he would not have pled guilty to being a felon in possession [of a firearm] if he had known that the government had to prove that he was aware of his status. Nor, based on the same facts, could he show that he is actually innocent of the offense of being a felon in possession of a firearm. For these reasons, the [C]ourt [should] find[] that [Petitioner can]not overcome the procedural default in his case and is not entitled to relief under <u>Rehaif</u>.

<u>United States v. Pennington</u>, No. 5:14CR30, 2021 WL 3375722, at *5 (W.D. Va. Aug. 3, 2021) (unpublished).[7]

Ground Two

The Section 2255 Motion argues in its second ground for relief that, "[i]n light of the commentary being inconstent [sic] with the guideline text, the N[.]C[. Gen. Stat. §] 90-95 conviction can no longer qualify" (Docket Entry 24, ¶ 12(Ground Two) (unattributed quotation marks omitted)). As support for this argument, the Section 2255 Motion states:

Prior to [ P]etitioner's sentencing (March, 2018 [sic]) several circuits had already ruled that the crimes that include the attempts and are broader than the federal definition no longer qualify as predicates. Therefore, in light of <u>Stinson v. U[nited] S[tates]</u>, [508 U.S. 36

---

[7] Alternatively, "[e]ven if Petitioner's <u>Rehaif</u> challenge was procedurally proper, such claim fails on the merits for largely the same reasons discussed above, with the record revealing that [any plea-hearing] error was harmless." <u>Cameron v. United States</u>, Nos. 2:18CR8, 2:19CV691, 2021 WL 4034082, at *5 n.4 (E.D. Va. Sept. 3, 2021) (unpublished); <u>accord</u> <u>Perrin v. United States</u>, Nos. 1:11CR318, 1:21CV26, 2021 WL 6206349, at *5 (M.D.N.C. Oct. 29, 2021) (unpublished) (Webster, M.J.), <u>recommendation adopted</u>, 2022 WL 19644 (M.D.N.C. Jan. 3, 2022) (unpublished) (Schroeder, C.J.); <u>Rose v. United States</u>, Nos. 5:18CR33, 5:20CV64, 2021 WL 2042092, at *5 (W.D.N.C. May 21, 2021) (unpublished).

16

> (1993),] U[nited] S[tates] v. Havis, [927 F.3d 382 (6th
> Cir. 2019) (en banc),] and U[nited] S[tates] v. Winstead,
> [809 F.3d 1082 (D.C. Cir. 2018),] the [U.S.S.G. §] 2k2.1
> base offense [level] is procedural[ly] incorrect and
> requires the correction of the [s]entence.

(Id., ¶ 12(Ground Two)(a) (underscoring added) (unattributed
quotation marks omitted); see also Docket Entry 17, ¶ 11 (setting
Petitioner's base offense level at 24 under Section 2K2.1(a)(2),
because "[Petitioner] committed the instant offense subsequent to
sustaining two felony convictions for either a crime of violence or
controlled substance offense," and citing Petitioner's prior
convictions for (1) robbery with a dangerous weapon and voluntary
manslaughter (id., ¶ 29) and (2) two counts of selling heroin (id.,
¶ 33)).)  Ground Two thus appears to contend that the PSR (and,
through its adoption, the Court) should not have set Petitioner's
base offense level at 24, because his North Carolina convictions
for selling heroin did not meet the definition of a controlled
substance offense under the Sentencing Guidelines.  See generally
N.C. Gen. Stat. § 90-89(2)(j) (classifying heroin as Schedule I
controlled substance); N.C. Gen. Stat. § 90-95 (setting out
controlled substance offenses, including sale thereof); U.S.S.G.
§ 2K2.1 cmt. n.1 (2018) ("'Controlled substance offense' has the
meaning given that term in § 4B1.2(b) and Application Note 1 of the
commentary to § 4B1.2." (bold font and parenthetical omitted)).[8]

---

[8] "The 2018 Guidelines Manual . . . was used to determine
[Petitioner's] offense level."  (Docket Entry 17, ¶ 10.)

That sentencing challenge does not meet the cognizability standard for collateral claims. "The language of § 2255 makes clear that not every alleged sentencing error can be corrected on collateral review. The Supreme Court has instructed that only those errors presenting a fundamental defect which inherently results in a complete miscarriage of justice are cognizable." United States v. Foote, 784 F.3d 931, 932 (4th Cir. 2015) (internal quotation marks omitted). Here, the Court (per Judge Osteen) "sentenced [Petitioner] within the statutory limits, and while the [contested guideline calculation] may have affected the ultimate sentence imposed, it did not affect the lawfulness of the sentence itself—then or now. Therefore, [the Court is] simply not presented with exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Id. at 943 (internal brackets, citation, and quotation marks omitted); see also id. at 941 ("[T]he Supreme Court has yet to stretch [the] concept [of sentence-enhancement innocence] to non-capital sentencing, and we will not do so here."); Johnson v. United States, Nos. 7:15CR54, 7:17CV236, 2019 WL 8012371, at *8 (E.D.N.C. July 1, 2019) (unpublished) (concluding that "claim challenging the court's . . . treatment of [prior] conviction as a [predicate] under [Section] 2K2.1(a)[] fails because it is not cognizable in a § 2255 proceeding"), recommendation adopted, 2020 WL 261754 (E.D.N.C. Jan. 17, 2020) (unpublished); Thomas v. United States,

18

Nos. 4:14CR722, 4:16CV2600, 2018 WL 3472733, at *2 (D.S.C. July 19, 2018) (unpublished) (same).

Ground Three

The Section 2255 Motion's third (and final) ground for relief asserts that Petitioner's trial counsel "was ineffective [for] failing to raise or preserve the issues [in Grounds One and Two, which r]equires a[n e]videntiary [hearing]." (Docket Entry 24, ¶ 12(Ground Three); see also id., ¶ 12(Ground Three)(a) ("The ABA and State Bar, along with the Constitution's Sixth Amendment[,] mandate[d] that [Petitioner's c]ounsel raise legal issues and also to stay upon [sic] the new developments in the law and what is before the Supreme Court as well. In this case, [Petitioner's c]ounsel failed to understand the legal changes and challenges surrounding [ P]etitioner's conviction, indictment requirementss [sic], requirements surrounding factual basis and if the priors continue to qualify after the flurry of S[u]p[reme] C[our]t and Circuit changes, thus deeming [Petitioner's] counsel as ineffective during critical stages." (unattributed quotation marks omitted)).)

To succeed on a claim of ineffective assistance of counsel, Petitioner must show that his counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687-94 (1984). "Surmounting Strickland's high bar is never an easy task. . . . [T]he standard for judging counsel's representation is a

19

most deferential one." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal citations and quotation marks omitted); see also Woodruff v. Warden, Perry Corr. Inst., C.A. No. 9:07-2739, 2008 WL 4200291, at *7 (D.S.C. Sept. 8, 2008) (unpublished) ("[R]epresentation by counsel must only be objectively reasonable, not flawless or to the highest degree of skill. Inherent in this standard is the acknowledgment that even the most skillful defense attorneys are bound to make mistakes . . . . If the legal system were to afford prisoners a cause of action merely for demonstrating that, in hindsight, their trial counsel could have done something better, the court system would be choked with habeas petitions . . . ." (internal citation and quotation marks omitted)), appeal dismissed, 326 F. App'x 698 (4th Cir. 2009).

As explained above (in Footnote 3), the failure of Petitioner's counsel to anticipate the Rehaif argument raised in Ground One does not establish deficient performance of the sort needed to sustain an ineffective assistance claim. Similarly, Petitioner cannot prove that his counsel acted unreasonably by failing to object to the calculation of Petitioner's base offense level via the rationale (somewhat inscrutably) articulated in Ground Two. Any such objection would have involved a denial that Petitioner's prior convictions for selling heroin in violation of N.C. Gen. Stat. § 90-95(a)(1) "necessarily fall[] within the Guidelines' description of a 'controlled substance offense,'"

20

<u>United States v. Ward</u>, 972 F.3d 364, 368 (4th Cir. 2020), i.e., "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense," U.S.S.G. § 4B1.2(b). Published Fourth Circuit authority construing another state statute materially indistinguishable from Section 90-95(a)(1), as well as persuasive authority from other North Carolina federal courts construing Section 90-95(a)(1), confirms that Petitioner's counsel did not commit professional malpractice by opting against the objection Petitioner now proposes.

In that regard, Petitioner's conviction for selling heroin arose under this North Carolina statute: "Except as authorized by this Article, it is unlawful for any person: (1) To manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver a controlled substance[.]" N.C. Gen. Stat. § 90-95(a); <u>see also</u> N.C. Gen. Stat. § 90-95(b)(1) ("A controlled substance classified in Schedule I or II shall be punished as a Class H felon[y], except . . . the sale of a controlled substance classified in Schedule I or II shall be punished as a Class G

21

felony . . . .").[9]  Upon analyzing a Virginia statute that likewise
"makes it 'unlawful for any person to manufacture, <u>sell</u>, give,
distribute, or possess with intent to manufacture, sell, give or
distribute a controlled substance or an imitation controlled
substance,'" <u>Ward</u>, 972 F.3d at 369 (emphasis added) (quoting Va.
Code § 18.2-248), the Fourth Circuit found a categorical match to
the "controlled substance offense" definition in Section 4B1.2, <u>see</u>
<u>id.</u> at 369-71.  In doing so, the Fourth Circuit stated that,
"[a]lthough [that Virginia statute] use[d] the terms 'sell' and
'give,' where § 4B1.2(b) does not, they fall within the plain
meaning of 'distribution' or 'dispensing' in § 4B1.2(b)."  <u>Id.</u> at
371; <u>see also</u> <u>id.</u> at 371 n.6 ("[W]hen a person sells heroin to
another person for cash, he receives the money and gives,
distributes, and dispenses the drug to the paying customer.").

        Additionally, prior to Petitioner's sentencing, federal courts
elsewhere in this state concluded that "North Carolina convictions
for the sale . . . of [a controlled substance] categorically
qualify as controlled substance offenses."  <u>Caldwell v. United</u>
<u>States</u>, Nos. 5:12CR15, 5:14CV181, 2015 WL 1186359, at *3 (W.D.N.C.
Mar. 16, 2015) (unpublished), <u>appeal dismissed</u>, 613 F. App'x 244
(4th Cir. 2015); <u>see also</u> <u>Day v. Andrews</u>, No. 5:17HC2038, 2017 WL
6611509, at *2-3 (E.D.N.C. Dec. 27, 2017) (unpublished) (rejecting

---

        [9] North Carolina classifies heroin as a Schedule I controlled
substance.  <u>See</u> N.C. Gen. Stat. § 90-89(2)(j).

collateral claim "argu[ing that] a controlled substance offense under [Section] 90-95 . . . 'covers a greater swath of conduct' than its generic counterpart under [S]ection 4B1.2(b)," in light of United States v. Dozier, 848 F.3d 180, 187, 188 (4th Cir. 2017) (holding that West Virginia law "provid[ing] 'it is unlawful for any person to manufacture, deliver, or possess with intent to deliver a controlled substance'" constituted "categorical match" for "controlled substance offense" under Section 4B1.2(b))), aff'd, 730 F. App'x 165 (4th Cir. 2018); United States v. Strain, Nos. 5:14CR60, 5:17CV230, 2017 WL 3669531, at *3 (E.D.N.C. Aug. 24, 2017) (unpublished) (citing Dozier in denying collateral attack on career offender designation based on North Carolina "convictions for the sale of cocaine[ and] possession with intent to sell or deliver cocaine"), appeal dismissed, 707 F. App'x 152 (4th Cir. 2017). Considering that authority, Petitioner cannot show that his counsel acted unreasonably by declining to raise an objection to the PSR's base offense level calculation.[10]

_____

[10] Recently (and thus well after Petitioner's sentencing), the Fourth Circuit issued an unpublished (and thus non-binding) decision overturning a sentence imposed based upon a guideline calculation which treated as a "controlled substance offense" a North Carolina "conviction identified in th[at defendant's] PSR as felony sale or delivery of a controlled substance within 300 feet of a school," United States v. Locklear, No. 19-4443, 2022 WL 2764421, at *2 (4th Cir. July 15, 2022) (unpublished) (emphasis added), because North Carolina law defines "delivery" in that context to include "attempted transfer," id. (citing N.C. Gen. Stat. § 90-87(7)), whereas another (published) Fourth Circuit decision (also recently) "determined that [Section] 4B1.2(b)'s
(continued...)

<u>CONCLUSION</u>

For all the foregoing reasons, all of Petitioner's collateral claims fail as a matter of law.

**IT IS THEREFORE RECOMMENDED** that the Section 2255 Motion (Docket Entry 24) be denied without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 20, 2023

---

[10](...continued)
definition of 'controlled substance offense' does not include an attempt to deliver a controlled substance," <u>id.</u> (citing <u>United States v. Campbell</u>, 22 F.4th 438 (4th Cir. 2022) (addressing conviction under West Virginia law)). That authority fails to establish that Petitioner's counsel rendered ineffective assistance in connection with Petitioner's sentencing in 2019, not only (A) because of the non-precedential status of <u>Locklear</u> and the recent vintage of both <u>Locklear</u> and <u>Campbell</u> (the issuance of which, like <u>Rehaif</u>, Petitioner's counsel did not have to anticipate to provide professionally reasonable representation), but also (B) because (unlike in <u>Locklear</u> or <u>Campbell</u>) Petitioner's PSR explicitly denoted his prior conviction at issue as "[s]ell [h]eroin" (not sell <u>and/or deliver</u> heroin) (Docket Entry 17, ¶¶ 11, 33), which conduct North Carolina law distinguishes as a more serious (and differentially punished) offense, <u>see</u> N.C. Gen. Stat. § 90-89(2)(j) (classifying heroin as Schedule I controlled substance); N.C. Gen. Stat. § 90-95(b)(1) ("A controlled substance classified in Schedule I or II shall be punished as a <u>Class H</u> felon[y], <u>except</u> . . . the <u>sale</u> of a controlled substance classified in Schedule I or II shall be punished as a <u>Class G</u> felony . . . ." (emphasis added)).